Opinion issued August 5, 2014



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00475-CV

_____

**LATISHA GUILLORY, Appellant**

**V.**

**CHRISTOPHER BOYKINS, Appellee**

---

**On Appeal from the 310th District Court**
**Harris County, Texas**
**Trial Court Case No. 2004-21455**

---

## O P I N I O N

Appellant, Latisha Guillory, challenges the trial court's order modifying the parent-child relationship. In four issues, she argues that (1) the trial court erred in denying her motion for new trial based on an alleged conflict of interest of the amicus attorney appointed on behalf of the child, J.T.B.; (2) the trial court

exceeded its authority in appointing appellee, J.T.B.'s father, Christopher Boykins, the sole managing conservator because Boykins did not properly plead for such relief; (3) the trial court erred in ordering Boykins' attorney's fees be withheld from Guillory's earnings in this modification case; and (4) the trial court committed reversible error in failing to file findings of fact and conclusions of law.

We reverse in part and remand for proceedings consistent with this opinion.

## Background

J.T.B. was born on January 11, 2003, to Guillory and Boykins, who were not married. On April 22, 2004, the parties entered into an "Agreed Child Support Review Order (Establishing the Parent-Child Relationship)." This order established that Boykins was J.T.B.'s biological father, and it appointed Guillory and Boykins as joint managing conservators, with Guillory retaining primary custody of J.T.B. In addition to being signed by both Guillory and Boykins, the order was signed by Cheryl F. Coleman as an assistant attorney general from the child support division. The trial court signed the order on May 11, 2004. On April 11, 2005, the trial court entered a child support order requiring Boykins to pay Guillory $361 each month.

Subsequently, a dispute arose between Guillory and Boykins regarding custody of J.T.B. In a supporting affidavit filed with the trial court and at trial, Boykins testified that in July 2009, Guillory appeared at his home with J.T.B. and

"said she could not handle [J.T.B.] and since I wanted him, I could have him." Boykins averred that he took actual care, control, and possession of J.T.B. at that time and that J.T.B. had resided with him from that time. According to Boykins, his possession continued until early 2012 when there was some sort of altercation with Guillory, which resulted in Guillory's removing J.T.B. from school and refusing to return him to Boykins.

Guillory, however, asserted that she never relinquished custody of J.T.B. to Boykins. She testified at trial that she and Boykins entered into an agreement in which Boykins would enroll J.T.B. in the KIPP Houston charter school in exchange for Guillory's releasing Boykins from certain child support obligations. She stated that Boykins enrolled J.T.B. in the local elementary school near his home, rather than at KIPP, but she permitted this because the location of the school was convenient for both of them. She stated that she exercised regular custody over J.T.B. at all relevant times preceding the filing of the underlying proceeding.

On March 28, 2012, Boykins filed an emergency motion to modify the parent-child relationship, seeking to modify the 2004 order. Boykins alleged that Guillory, as the conservator with the exclusive right to designate the primary residence of the child, had voluntarily relinquished the primary care and possession of J.T.B. to him for the past three years. He further alleged that he had had physical custody of J.T.B. for three years and asked the court to modify the child

3

support order to provide him child support. Specifically, Boykins asked that he and Guillory be appointed "temporary joint managing conservators" and that he be designated as the conservator with the exclusive right to designate J.T.B.'s primary residence. Boykins also sought a temporary restraining order and requested that Guillory be ordered to pay attorney's fees.

On April 24, 2012, the trial court appointed Cheryl Coleman as the amicus attorney "to serve as an arm of the court in the making of all determinations regarding the child [J.T.B.]." On May 3, 2012, Coleman, in her capacity as the amicus attorney appointed to represent J.T.B.'s interests, entered a general denial.

On May 7, 2012, Guillory filed a counter-petition to modify the parent-child relationship. Guillory alleged that Boykins "kept the child from school and [hid] the child from" her.

On June 5, 2012, Guillory moved to enforce the trial court's April 11, 2005 child-support order requiring Boykins to pay $361 each month, arguing that Boykins was in arrears for $7,642.58 at the time of the motion. She filed another motion for enforcement of the child support order on July 10, 2012.

On July 25, 2012, Boykins answered Guillory's motion to enforce the child support order. He disputed the amounts of child support that Guillory claimed he owed, asserting that he had made additional payments that she did not include in her motion. He also asserted that Guillory had voluntarily relinquished actual

4

possession and control of the child for time periods in excess of court-ordered periods of possession, and, thus, he was entitled to an offset and credit for the actual support he paid during those periods. In conjunction with this response, Boykins provided a written agreement between himself and Guillory stating that the parties had agreed that J.T.B. would live with Boykins and attend the elementary school near Boykins' home. Boykins also provided records establishing that he had fully complied with his child support obligations. Accordingly, on September 6, 2012, the trial court entered an enforcement order. It found that Boykins was not guilty of the alleged violations of the April 11, 2005 order. The trial court denied Guillory's requested relief and decreed that "all Child Support obligations and prior child support judgments of [Boykins] are reduced to judgment and confirmed at zero dollars ($0.00) as of August 23, 2012."

Also on September 6, 2012, the trial court entered temporary orders designating Boykins as the temporary sole managing conservator and Guillory as the temporary possessory conservator and requiring Guillory to pay $240 each month in child support. The record demonstrated that the trial court had originally intended to name Guillory and Boykins as joint managing conservators and award Boykins the right to determine J.T.B.'s residence. However, Guillory made a scene at the hearing in which the trial court stated its ruling on the record, and, as a result, the trial court entered the temporary order naming Boykins as the sole

managing conservator. The trial court further ordered that Guillory's visitation be supervised through the SAFE visitation program.

Pursuant to the motion of the amicus attorney, Coleman, the trial court ordered the parties to pay Coleman's fees by October 5, 2012. The trial court ordered Boykins to pay $1,815.45, and it required Guillory to pay $3,315.45. On October 15, 2012, Guillory filed an emergency motion to disqualify Coleman as the amicus attorney based on Coleman's previous involvement in the case in 2004 on behalf of the attorney general's office. However, the record does not contain a ruling on this motion, and the docket sheet reflects that the motion was "passed."

The parties were both present for the trial on the merits. Boykins testified that in 2009 Guillory dropped J.T.B. off at his apartment and he took custody of J.T.B. at that time. Boykins enrolled J.T.B. at the elementary school near his apartment, which J.T.B. attended until March 2012. Boykins testified that J.T.B. had been having behavioral problems while he lived with Guillory, but since J.T.B. had begun living with him, his behavior and grades had improved, although he still had some behavioral problems.

Boykins also testified that Guillory would come over to his home and visit J.T.B., spending time with him and staying to put him to bed. Over time, however, she visited less and less often. On cross examination, Boykins testified that J.T.B. would occasionally spend holidays and spring break with Guillory and that J.T.B.

6

had taken a trip to Alabama with his grandmother, Guillory's mother, during the summer.

Regarding the temporary orders entered by the trial court on September 6, 2012, Boykins testified that Guillory had not complied with all of the requirements of the SAFE program because she had been late on several occasions and had become "irate" with some of the program's staff. Boykins also testified that Guillory had been "confrontational" with his mother, Evon Boykins, on one occasion when Evon was at the school to pick up J.T.B. Boykins testified that J.T.B. was in the car with Evon during the confrontation with Guillory, and at that point he decided it was not in J.T.B.'s best interest to have any contact with Guillory outside the SAFE program. He agreed with his attorney that he wanted the trial court to "adopt the temporary orders as a final order of the Court." He also sought reimbursement from Guillory for insurance costs and for an adjustment of her child support obligations to reflect her actual earnings rather than minimum wage as it was calculated in the hearing on temporary orders.

Finally, Boykins' attorney asked, "In addition to asking that Ms. Guillory have supervised visitation, that you remain the sole managing conservator, and that she pay guideline child support and medical support, are you asking also that Ms. Guillory pay for your attorney's fees?" Boykins replied, "Yes, ma'am." He testified that it was necessary for him to hire an attorney in this case because he

7

would not have been able to get Guillory to return J.T.B. to him otherwise. He also testified that, in addition to the fees that were reasonable and necessary to obtain the order seeking the return of J.T.B. to his custody, he had to incur fees to defend against Guillory's motion for enforcement. On cross examination, the amicus attorney asked, "And with regard to decision making, you ask this Court to appoint you as the sole managing conservator of [J.T.B.], and I just have some questions about that. Do you think it's possible for you and [Guillory] to be able to make decisions regarding your son together?" Boykins stated that they could not make decisions together because he felt that Guillory "has an anger issue; and she argues, fuss, curse, [sic] and she just doesn't want to come to any agreement." Boykins further testified that Guillory had had minimal contact with J.T.B.'s school and teachers prior to the filing of the underlying proceedings. However, since then, Guillory had been involved in an altercation at J.T.B.'s elementary school on April 24, 2012, when she and her mother arrived to "forcibly remove" J.T.B. from his classroom, requiring the involvement of the HISD police.

Boykins further testified regarding why he wanted Guillory's visitation to continue through the SAFE program. He stated that he wanted Guillory to have a relationship with J.T.B., "but she's not doing what she's supposed to do to gain that relationship with her child." He testified that her phone interactions with J.T.B. were "negative," that she frequently discussed the court case with J.T.B.,

8

that she had visited J.T.B. at his after-school program in violation of the trial court's orders, and that she had violated the court's temporary possession order. Boykins stated that he believed Guillory was a danger to J.T.B. because of "her outlashes and her anger," and he testified that J.T.B. was "always in fear." Boykins also testified regarding an incident in which Guillory appeared at his apartment with two men who pounded on Boykins' door, in spite of being warned to stay away by the apartment complex's courtesy officer. Boykins testified that he did not interact with Guillory on that instance, but he did call the police.

Guillory also testified. She testified that up until 2009, she had had primary custody of J.T.B. and that Boykins was not involved in his life. Guillory testified that she did not drop J.T.B. off with Boykins in the summer of 2009. She testified that Boykins approached her about enrolling J.T.B. in a KIPP Academy, but instead he enrolled J.T.B. in the local elementary school while she and J.T.B. were on vacation in Alabama. Guillory stated that she agreed to J.T.B.'s enrollment at the local elementary school because it was a convenient location for both Boykins and herself. She testified that while J.T.B. attended the elementary near Boykins' apartment she took him to school and picked him up "the majority of the week" during the 2009–2010 school year. She also testified that J.T.B. would spend the night with her each night. Guillory also testified that she spent summers, major

9

holidays such as Thanksgiving and Christmas, and spring break with J.T.B. and that Boykins did not until the court entered its temporary orders in 2012.

Guillory testified that in March 2012, Boykins kept J.T.B. out of school "for six straight days" and "[n]obody knew where he was." Guillory also testified regarding an April 5, 2012 incident in which Guillory admitted she went to J.T.B.'s school and removed him directly from the classroom without going through the front office. Guillory testified that as she was trying to leave with J.T.B., she was "bum-rushed" by school personnel who "tore [her] apart from [her] son." Guillory also testified regarding other incidents in which she had conflicts with Boykins, his mother, Evon, and school personnel. Guillory testified that Boykins had been unpleasant to her since January 2013. She stated that "he sent a few harassing text messages that [she] ignored" and that she had received two certified letters from Boykins' mother Evon asking Guillory to stay off of her property.

Guillory admitted that she had only made two of the required child support payments, leaving six months in which she had not paid her child support obligations. She testified, "I've never paid child support before. I don't know—." She testified that she paid for health insurance for J.T.B. and her daughter, but she acknowledged that she never informed Boykins that she had paid for insurance coverage for J.T.B. She also denied discussing the case with J.T.B.

Boykins' attorney testified regarding her attorney's fees. She testified that she was a board-certified attorney, that she billed $350 per hour, that she had only charged Boykins for the time she spent in court, which totaled 28 hours, and that she believed the fees incurred in this case were reasonable and necessary. She also testified regarding the specific costs incurred in the case. She stated that her total fees amounted to $10,044 and asked for the trial court to enter judgment against Guillory in that amount.

On February 22, 2013, the trial court held a rendition hearing in which it granted modification and appointed Boykins as sole managing conservator. It appointed Guillory as the possessory conservator and awarded her visitation pursuant to a standard possession order. The trial court also ordered Guillory to pay child support in the amount of $400 per month.

The trial court signed its written order on March 6, 2013. It found that "the material allegations in the petition to modify are true and that the requested modification is in the best interest of the child." The trial court's written judgment reflected the appointments and support order announced at the rendition hearing: the court appointed Boykins as J.T.B.'s sole managing conservator and appointed Guillory as possessory conservator and ordered her to pay $400 per month in child support to Boykins. The trial court further awarded Boykins' attorney $11,744 against Guillory, payable at the rate of $150 per month, and it deemed these fees as

"additional child support." The trial court ordered those funds withheld from Guillory's paycheck. The trial court also ordered Boykins to pay the remainder of Coleman's attorney's fees. In a separate order, the trial court ordered the withholding of attorney's fees from Guillory's earnings.

On March 13, 2013, Guillory requested written findings of fact and conclusions of law "as provided by Rule 296 of the Texas Rules of Civil Procedure."

On April 4, 2013, Guillory moved for a new trial based on the following grounds: the trial court failed to disqualify amicus attorney Cheryl Coleman; the trial court "erroneously ordered payment of [Boykins'] attorney's fees by withholding, or garnishment, without the proper findings required for such orders"; there was insufficient evidence to remove Guillory as a joint managing conservator; the trial court erred in removing Guillory as joint managing conservator and in naming Boykins the sole managing conservator because Boykins did not plead for such relief; the trial court improperly "disallowed the elections provided for in the Texas Family Code section 153.617 yet did not make any findings as required by that section"; and there was insufficient evidence that Guillory ceded actual care, control, and possession of the child to Boykins. Guillory also filed proposed findings of fact and conclusions of law on April 4, 2013.

On June 4, 2013, Guillory filed notice of past-due findings of fact and conclusions of law. However, the trial court never signed or filed any findings of fact or conclusions of law. This appeal followed.

**Conflict of Interest**

In her first issue, Guillory argues that the trial court erred in denying her motion for new trial based on an alleged conflict of interest of the amicus attorney, Cheryl Coleman. However, Guillory did not preserve this complaint for consideration on appeal.

To present a complaint for appellate review, the record must show that (1) the complaint was presented to the trial court by a timely request, objection, or motion stating the specific grounds for the desired ruling if the specific grounds are not apparent from the context and (2) the trial court ruled on the request. TEX. R. APP. P. 33.1(a); *Bush v. Bush*, 336 S.W.3d 722, 729 (Tex. App.—Houston [1st Dist.] 2010, no pet.). To be considered timely, the request, objection, or motion generally must be made at the earliest possible opportunity, thereby allowing the trial court an opportunity to cure the error. *See Tryco Enters., Inc. v. Robinson*, 390 S.W.3d 497, 505 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd) (stating, in context of Rule of Appellate Procedure 33.1 and Rule of Evidence 103, that "the party must have made a timely, specific objection at the earliest possible opportunity"); *Lake v. Premier Transp.*, 246 S.W.3d 167, 174 (Tex. App.—Tyler

2007, no pet.) ("To be considered timely, an objection must be specific enough to enable the trial court to understand the precise nature of the error alleged and interposed at such a point in the proceedings so as to enable the trial court the opportunity to cure the error alleged, if any.").

Here, the trial court appointed Coleman as the amicus attorney on April 24, 2012. Approximately six months later, on October 15, 2012, just days after Guillory's court-ordered deadline to pay Coleman $3,315.45 in fees, Guillory filed an emergency motion to disqualify Coleman as the amicus attorney based on Coleman's previous involvement in the case in 2004 on behalf of the attorney general's office. However, the docket sheet reflects that the motion to disqualify was "passed," and the trial court never entered any ruling on this motion. Guillory did not raise this issue again at any point in the proceedings until after the trial court had reached its final judgment and she filed her motion for new trial.

Because Guillory did not raise her objection until after the trial had occurred and the amicus attorney had already completed all of her work on the case, Guillory's objection to Coleman's appointment as the amicus attorney was not timely. It was not made at the earliest possible opportunity or at a time that would have allowed the trial court an opportunity to cure the error. *See Bush*, 336 S.W.3d at 728–29 (holding that objection to scope of amicus attorney's appointment made in motion for new trial filed more than eighteen months after court appointed

14

amicus attorney failed to preserve complaint for appeal); *cf. Suttles v. Vestin Realty Mortg. I, Inc.*, 317 S.W.3d 412, 418 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("[A] party objecting to a master's appointment must make an objection not within some arbitrary time period, but before it has taken part in proceedings before the master or before the parties, the master, and the court have acted in reliance on the master's appointment.") (quoting *Owens-Corning Fiberglas Corp. v. Caldwell*, 830 S.W.2d 622, 625 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding)); *Magna Donnelly Corp. v. DeLeon*, 267 S.W.3d 108, 114 (Tex. App.—San Antonio 2008, no pet.) (holding that party waived complaint about appointment of multiple guardians ad litem for similarly situated minor parties because objecting party did not object either at time of initial request for appointments or during settlement hearing).

We overrule Guillory's first issue.

## Sufficiency of Pleadings

In her second issue, Guillory argues that the trial court exceeded its authority in appointing Boykins as J.T.B.'s sole managing conservator because Boykins did not properly plead for such relief.

Texas Rule of Civil Procedure 301 provides that a court's judgment shall conform to the pleadings. TEX. R. CIV. P. 301. A party's pleading invokes the trial court's jurisdiction, and, therefore, an order or judgment not supported by the

15

pleadings is void. *In re P.M.G.*, 405 S.W.3d 406, 416–17 (Tex. App.—Texarkana 2013, no pet.). The judgment must conform to the pleadings; however, if issues not raised by the pleadings are tried by express or implied consent of the parties, these issues shall be treated as if they had been raised by the pleadings. *Flowers v. Flowers*, 407 S.W.3d 452, 458 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see* TEX. R. CIV. P. 67, 301; *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991); *Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 779–80 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Trial by consent is a doctrine that is only intended to cover the exceptional case in which it clearly appears from the record as a whole that the parties tried the unpleaded issue, and it is not intended to establish a general rule of practice and should be applied with care. *In re A.B.H.*, 266 S.W.3d 596, 600 (Tex. App.—Fort Worth 2008, no pet.). To determine whether an issue was tried by consent, we must review the record not for evidence of the issue, but rather for evidence of trial of the issue. *Hartford Fire Ins.*, 287 S.W.3d at 780; *In re A.B.H.*, 266 S.W.3d at 600. Consent may be found only where evidence regarding a party's unpleaded issue is developed under circumstances indicating that both parties understood the issue was in the case, and the other party failed to make an appropriate complaint. *In re A.B.H.*, 266 S.W.3d at 600.

Here, Boykins filed pleadings seeking to modify the custody and support provisions regarding J.T.B. This invoked the trial court's jurisdiction to determine the proper modification of Guillory's and Boykins' custody and support obligations regarding J.T.B. The trial court subsequently issued a temporary order naming Boykins as J.T.B.'s sole managing conservator on September 6, 2012. Thus, the record demonstrates that both parties understood at that point that the issue of Boykins' appointment as J.T.B.'s sole managing conservator "was in the case." *See id.*

Furthermore, the record demonstrates that the issue was tried during the trial on the merits and that Guillory failed to raise an appropriate complaint. *See id.* Boykins stated on the record that he was seeking to make the trial court's temporary order permanent. In addition, his own counsel and the amicus attorney both made statements to the effect that Boykins was seeking to be named as J.T.B.'s sole managing conservator in the trial court's final order. During trial, the parties presented evidence relevant to the propriety of naming Boykins as J.T.B.'s sole managing conservator and Guillory's inability to cooperate with Boykins as a joint managing conservator. Boykins stated during his testimony that he was seeking to make the trial court's temporary order permanent, and he testified that he and Guillory could not make decisions together because he felt that Guillory "has an anger issue; and she argues, fuss, curse, [sic] and she just doesn't want to

17

come to any agreement." He also testified that he wanted Guillory's visitation to continue through the SAFE program because Guillory was "not doing what she's supposed to do to gain that relationship with her child"; because her phone interactions with J.T.B. were "negative"; because she frequently discussed the court case with J.T.B. and visited J.T.B. at his after-school program in violation of the trial court's orders; and because he believed that Guillory was a danger to J.T.B. because of "her outlashes and her anger" that left J.T.B. "always in fear."

Guillory and her attorney actively participated at trial. Guillory did not raise any objection based on the absence of pleadings when evidence relevant to Boykins' appointment as J.T.B.'s sole managing conservator was admitted or when Boykins, his attorney, or Coleman made statements that Boykins was seeking appointment as J.T.B.'s sole managing conservator. *See id*; *see also Roark*, 813 S.W.2d at 495 (holding that party who allows issue to be tried by consent and who fails to raise lack of pleading before submission of case cannot later obtain reversal on that ground on appeal).

Thus, the record contains "evidence of trial of the issue" in the form of Boykins', his attorney's, and Coleman's statements on the record to that effect. *See Hartford Fire Ins.*, 287 S.W.3d at 780; *In re A.B.H.*, 266 S.W.3d at 600. We hold that the issue of Boykins' appointment as J.T.B.'s sole managing conservator was tried by implied consent, and, thus, the trial court did not err in appointing

18

Boykins as J.T.B.'s sole managing conservator even though Boykins' formal pleadings did not request such relief. *See also In re A.D.*, –S.W.3d–, No. 14-12-00914-CV, 2014 WL 1800082, at *12–13 (Tex. App.—Houston [14th Dist.] May 6, 2014, no pet. h.) (holding that trial court did not err in granting relief not requested in original petition where allegations in petitioner's affidavits and other documents filed with trial court, together with trial court's temporary orders granting complained-of relief, "provided fair notice" to opposing party).

We overrule Guillory's second issue.

### Withholding Attorney's Fees

In her third issue, Guillory argues that the trial court erred in ordering that Boykins' attorney's fees be withheld from her earnings in a non-child-support enforcement case. Specifically, Guillory argues that the trial court erred in deeming the award of attorney's fees from her to Boykins' counsel additional child support and ordering those amounts withheld from her wages. She argues that, although she filed a motion for enforcement of a prior child support order, the trial court entered a separate order denying that motion to support. Thus, the only proceeding before the trial court that was resolved by the final order was Boykins' modification suit. Because precedent of this Court and the Texas Supreme Court has held that attorney's fees may not be characterized as child support in non-

19

child-support-enforcement proceedings, such as this modification suit, the trial court erred. We agree.

In a suit affecting the parent-child relationship, the Family Code provides that a trial court "may render judgment for reasonable attorney's fees and expenses" and that such fees "may be enforced . . . by any means available for the enforcement of a judgment for debt." TEX. FAM. CODE ANN. § 106.002 (Vernon 2014); *Tucker v. Thomas*, 419 S.W.3d 292, 296–97 (Tex. 2013); *In re Moers*, 104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Not all attorney's fees, however, are treated as costs enforceable as debt. *In re Moers*, 104 S.W.3d at 611; *see Tucker*, 419 S.W.3d at 296–97 (discussing various provisions of Family Code providing for award of attorney's fees and contrasting section 106.002, providing judgment for attorney's fees that may be enforced as debt, and section 157.167, providing that judgment for attorney's fees "may be enforced by any means available for the enforcement of child support, including contempt"). Attorney's fees are permissibly taxed as child support when incurred during child support enforcement proceedings. *See Tucker*, 419 S.W.3d at 297; *In re Moers*, 104 S.W.3d at 611.

Although attorney's fees may be taxed as child support in suits brought to *enforce* a child-support order, appellate courts distinguish fees awarded in suits brought to *modify* a child-support order because of the consequences that follow

20

from characterizing the fees as child support. *In re Moers*, 104 S.W.3d at 611; *see Tucker*, 419 S.W.3d at 298 ("Since the Legislature expressly authorized the assessment of attorney's fees as additional child support in enforcement suits, but not in modification suits or under Title 5's general attorney's fees provision, we conclude that the Legislature did not intend to grant the trial court authority to characterize [one parent's] attorney's fees as part of [the other parent's] child support obligation.").

Texas law forbids imprisoning a person for debt and collecting attorney's fees by contempt proceedings. *Tucker*, 419 S.W.3d at 297 (citing TEX. CONST. art. I, § 18). However, attorney's fees and costs awarded in proceedings to enforce child support payments are not considered debt and may be enforced through a contempt judgment. *Id.* (discussing provisions of Family Code section 157.167). Furthermore, a decree that deems attorney's fees to be child support could result in garnishment of the obligor's wages, as has happened here. *See id.* In designating attorney's fees as child support, therefore, a trial court imposes potentially serious consequences on the obligor. *See id.*; *In re Moers*, 104 S.W.3d at 611.

As the Texas Supreme Court held in *Tucker*, because the Legislature has permitted attorney's fees to be taxed as child support solely in section 157.167, which is limited to child support enforcement proceedings, an award of attorney's fees taxed as child support is not permissible in non-enforcement modification

21

proceedings. 419 S.W.3d at 298; *see also In re Moers*, 104 S.W.3d at 612 ("Subject to [the] single exception [provided for in section 157.167], section 106.002 provides that attorney's fees are to be awarded as costs that are enforceable as debt."). Likewise, the trial court lacks authority to deem attorney's fees incurred in a non-enforcement proceeding as "necessaries" provided to the child pursuant to either the common law or section 151.001, which codified a parent's common liabilities. *Tucker*, 419 S.W.3d at 299. Thus, section 151.001 may not be used as a vehicle for awarding attorney's fees in non-enforcement modification suits as necessaries or as additional child support. *Id.* at 299–300.

Here, Boykins filed a petition seeking to modify the previous child custody and support obligations of the parties. Although Guillory filed a motion to enforce the previous child support order in conjunction with this litigation, the trial court denied that motion in a separate order. The only issue before the trial court at the time of the trial on the merits was the modification sought by Boykins. It was in the context of that petition for modification that the trial court awarded child support and attorney's fees. Thus, this was not an enforcement proceeding under Chapter 157. Rather, it was a modification proceeding pursuant to Chapter 156, and the only authority for the award of attorney's fees comes from section 106.002. *See Tucker*, 419 S.W.3d at 296–97.

22

Section 106.002 does not allow for attorney's fees to be deemed as additional child support or for payment of such attorney's fees to be enforced through garnishment of wages. *See id.* at 298. However, in its final order, the trial court ordered that Guillory pay $400 per month as child support. The trial court also found that Boykins' attorney, Stephanie Proffitt, "incurred necessary and reasonable attorney's fees and expenses." It ordered that Guillory pay Proffitt $11,744 in attorney's fees, and it deemed this amount as "additional child support." The trial court specifically ordered that Guillory pay Proffitt $150 per month until she had paid off the entire balance plus interest and that any employer of Guillory's "shall be ordered to withhold" from Guillory's disposable income the amount she owed to Proffitt. In a separate order, the trial court ordered the withholding of attorney's fees from Guillory's disposable income.

Because the underlying proceeding was not an enforcement proceeding pursuant to Chapter 157, the trial court lacked the authority to deem the attorney's fees as "additional child support" and to order them withheld from Guillory's earnings. *See Tucker*, 419 S.W.3d at 297; *In re Moers*, 104 S.W.3d at 611. Accordingly, we reverse the portion of the trial court's judgment deeming the attorney's fees as additional child support and ordering their withholding from

23

Guillory's earnings.[1]  *See Tucker*, 419 S.W.3d at 301 (holding that appellate court erred in determining that attorney's fees in non-enforcement modification suit could be taxed as additional child support and remanding case to trial court for proceedings consistent with its opinion).

We sustain Guillory's third issue.

### Findings of Fact and Conclusions of Law

In her fourth issue, Guillory argues that the trial court committed reversible error in failing to file findings of fact and conclusions of law.

In a case tried without a jury, any party may request, within twenty days after the judgment is signed, that the trial court prepare findings of fact and conclusions of law. TEX. R. CIV. P. 296.  The final judgment was signed on March 6, 2013; thus, Guillory's initial request, filed on March 13, 2013 was timely.  A trial court's findings of fact and conclusions of law are due within twenty days after a timely request is filed. TEX. R. CIV. P. 297.  Here, the findings of fact and conclusions of law were due by April 2, 2013, but none were filed.

The rules provide that if the trial court fails to issue timely findings of fact and conclusions of law as requested, "the party making the request shall, within thirty days after filing the original request, file with the clerk and serve on all other parties in accordance with Rule 21a a 'Notice of Past Due Findings of Fact and

---

[1]     We note that Guillory did not challenge the award of attorney's fees itself or challenge the amount of attorney's fees awarded.

24

Conclusions of Law.'" TEX. R. CIV. P. 297. Because Guillory's original request for findings of fact and conclusions of law was filed on March 13, 2013, her notice of past-due findings of fact and conclusions of law was due by April 12, 2013. However, she did not file the notice until June 4, 2013, eighty-three days after her original request. Because the record does not reveal that Guillory timely filed a reminder of past-due findings of fact and conclusions of law as required by Rule 297, this appellate complaint is waived. *See Las Vegas Pecan & Cattle Co. v. Zavala County*, 682 S.W.2d 254, 255–56 (Tex. 1984) (holding that appellate complaint regarding trial court's failure to file findings of fact and conclusions of law was waived where past-due notice was filed four days late).

Guillory argues that her filing of a motion for new trial extended her deadline for filing the notice of past-due findings and conclusions. However, she cites no authority to support this proposition, nor could we find any. We decline to alter the requirements of the Rules of Civil Procedure and the precedent of the Texas Supreme Court for the timely filing of a request for findings and conclusions and a past-due notice.

Even if we were to presume that Guillory had not waived error, we would conclude that she was not harmed. When a trial court fails to file findings of fact and conclusion of law, error is harmful if it prevents an appellant from properly presenting a case to the appellate court. *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex.

25

1996) (per curiam); *Watts v. Oliver*, 396 S.W.3d 124, 131 (Tex. App.—Houston [14th Dist.] 2013, no pet.).  Here, the lack of findings of fact and conclusions of law has not prevented Guillory from presenting her complaints regarding the alleged conflict of interest, the failure of the judgment to conform to the pleadings, or the award of attorney's fees as additional child support to this Court.  Guillory does not identify any issue that she was unable to brief as a result of the trial court's failure to make findings of fact and conclusions of law.  *See Tenery*, 932 S.W.2d at 30; *Watts*, 396 S.W.3d at 131.

Guillory also argues that we should reverse the trial court's final order for its failure to provide findings of fact required by Family Code section 154.130(a)(3) when the amount of child support ordered by the trial court varies from the amount computed by applying the percentage guidelines set out in the Family Code.  *See* TEX. FAM. CODE ANN. § 154.130(a)(3) (Vernon 2008).  Guillory argues that because the trial court ordered attorney's fees as additional child support and ordered those amounts withheld from her earnings, "this would logically raise the child support ordered to be paid by [Guillory] above the guideline amount."  We have already held that the trial court erred in awarding those amounts as additional child support, and we have reversed that portion of the trial court's final order.  Guillory does not argue that the remaining support ordered by the trial court exceeds the statutory guidelines.  Thus, we conclude that we need not reverse the

trial court's judgment on the basis that it failed to file findings required by section 154.130.

We overrule Guillory's fourth issue.

## Conclusion

We reverse the portion of the trial court's final order deeming Boykins' attorney's fees as "additional child support" and ordering the withholding of such fees from Guillory's earnings. We affirm the remainder of the trial court's final order, including its determination of the amount of attorney's fees to be awarded. We remand the case to the trial court for proceedings consistent with this opinion.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.