**Opinion issued September 29, 2022**



In The

# Court of Appeals

### For The

# First District of Texas

_____

### NO. 01-22-00306-CV

_____

## IN THE INTEREST OF I.A.B.N., A CHILD

---

**On Appeal from the County Court at Law**
**Austin County, Texas**
**Trial Court Case No. 2017L-6966**

---

## MEMORANDUM OPINION

In this private termination of parental rights case, appellee A.A.N. ("Mother")

sought to terminate the parental rights of appellant L.B.B. ("Father") to the parties'

minor daughter I.A.B.N. ("Isabelle").[1] Mother sought termination under Family

---

[1]  In this opinion, we refer to the minor child, her parents, and her grandmothers by
pseudonyms to protect their privacy.

Code section 161.001(b)(1)(F). Father, who had previously had his possession and access rights to Isabelle suspended, requested that he be allowed to have access to Isabelle. The trial court held a hearing, at which it repeatedly stated that the issue before the court at that time was whether Father should be allowed supervised visitation with Isabelle. Several months later, without further hearing, the trial court terminated Father's parental rights to Isabelle pursuant to Family Code subsections 161.001(b)(1)(C) and 161.001(b)(1)(F).

In three issues on appeal, Father contends that (1) the trial court reversibly erred by terminating his parental rights to Isabelle because no pleadings supported termination under section 161.001(b)(1)(C), that issue was not tried by consent, and neither of the grounds specified in the termination order were supported by legally or factually sufficient evidence; (2) the court violated his due process rights by terminating his parental rights without a final trial or by not providing him notice that the hearing on supervised visitation was a trial setting on termination; and (3) the court erred by failing to appoint an amicus attorney or attorney ad litem for Isabelle. We reverse and remand for further proceedings.

## Background

Mother and Father have one child together, Isabelle. Isabelle was seven years old at the time of the hearing in this case.

In December 2017, the trial court signed an agreed order that adjudicated Father's paternity of Isabelle. The court appointed Mother and Father as joint managing conservators, granted Mother the exclusive right to determine Isabelle's primary residence, and granted Father possessory rights. The order required Father to pay $541 per month in child support and $280 per month in medical support for Isabelle.

It is undisputed that Father did not comply with his support obligation. Mother moved for enforcement of Father's support obligation and requested that the trial court confirm the amount of support arrearages. After a hearing, the trial court signed an order in which it found that Father violated the child support and medical support provisions of the December 2017 order. The court confirmed Father's support arrearages in the amount of $6,500 and ordered Father to pay $125 per month towards the arrears. The court also lowered Father's monthly child support obligation to $380 and his monthly medical support obligation to $220.

In January 2020, Mother moved to modify the parent-child relationship. She alleged that Father had used drugs and had been arrested for possession of methamphetamine. She also alleged that Father had been "found to have marijuana in the car" when dropping Isabelle off after visitation. Mother requested that she be named sole managing conservator of Isabelle and that Father have no possession of Isabelle due to his drug use.

In May 2020, the trial court signed a default order granting Mother's motion to modify. The court appointed Mother as Isabelle's sole managing conservator and appointed Father as possessory conservator. The court also suspended Father's possessory rights, ordering that Father was to have "no possession and access of the child . . . until order is further modified by the Court."

Both Father and Mother sought relief in 2021. In March 2021, Father filed a petition to establish paternity of Isabelle and to be named as joint managing conservator. Father later amended this petition to request reduction of his child support obligation. He requested "supervision" so he could have time with Isabelle and that "appropriate orders be made for access to the child and the allocation of the rights and duties of the conservators."

On June 1, 2021, Mother filed a petition to terminate Father's parental rights to Isabelle. She alleged one statutory predicate ground for termination: that Father failed to support Isabelle in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition. *See* TEX. FAM. CODE § 161.001(b)(1)(F).

The trial court held an evidentiary hearing on November 29, 2021. After an off-the-record discussion with the parties, the trial court repeatedly stated that the only issue for the hearing was whether to allow Father to have supervised visitation with Isabelle. The parties were directed to limit their testimony to this issue.

Father, Mother, Isabelle's paternal grandmother ("Julie"), and Isabelle's maternal grandmother ("Michelle") all testified at the hearing. All witnesses testified about two visits that Father had with Isabelle: an in-person visit in March 2021 and a FaceTime visit in November 2021. The witnesses' testimony addressed how Father and Isabelle interacted, whether Isabelle was happy to see Father, Isabelle's demeanor, and any effects on Isabelle's behavior after the visits. Mother testified that she did not want the court to grant supervised visitation; instead, she wanted the court to terminate Father's parental rights.

The witnesses also testified concerning Father's repeated failure to pay child support, his history with drug usage, his legal troubles relating to his drug usage, and his stays in rehabilitation facilities. Father had been in rehab for most of 2021, and he had been released several weeks before the hearing. Father was not employed at the time of the hearing.

At the close of the hearing, the trial court stated its intent to confer with the Attorney General's office concerning Father's child support arrearages. The court closed the hearing by stating that it would consider whether to allow Father to have supervised visitation. Until the court made that decision, the current visitation order would stay in place, and the court would notify the attorneys "about any modifications."

The trial court did not hold any further hearings. On March 25, 2022, the court signed an order terminating Father's parental rights. The trial court found that two statutory predicate grounds were supported by clear and convincing evidence: Family Code section 161.001(b)(1)(C) and section 161.001(b)(1)(F). The court also found that termination of Father's parental rights was in Isabelle's best interest.

At Father's request, the trial court filed findings of fact and conclusions of law. This appeal followed.

## Sufficiency of the Evidence

In his first issue, Father contends that the trial court erred by rendering a final order terminating his parental rights to Isabelle because no pleadings supported termination under section 161.001(b)(1)(C) and the issue was not tried by consent. He further argues that the trial court's findings of both statutory predicate grounds— 161.001(b)(1)(C) and 161.001(b)(1)(F)—were not supported by legally or factually sufficient evidence.

### A.     Standard of Review

A parent's right to the "companionship, care, custody, and management" of their children is a constitutional interest that is "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982) (quoting *Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 27 (1981)); *In re D.T.*, 625 S.W.3d 62, 69 (Tex. 2021) (recognizing that parental right to make child-rearing

6

decisions is "fundamental"). Due to the final nature of termination proceedings, we "carefully scrutinize" such proceedings and strictly construe involuntary termination statutes in the parent's favor. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012); *see In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012). Because protection of the child is "paramount," parental rights are not absolute and "are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quotation omitted).

For a trial court to terminate a parent's rights, the party seeking termination must prove that (1) the parent's actions or omissions satisfy a statutory predicate ground set out in Family Code section 161.001(b)(1), and (2) termination of the parent's rights is in the best interest of the child. *See* TEX. FAM. CODE § 161.001(b). As a matter of due process, the party seeking termination must prove both elements by clear and convincing evidence. *Id.*; *In re E.N.C.*, 384 S.W.3d at 802 (stating that heightened burden is mandated by both Family Code and Due Process Clause). The Family Code defines clear and convincing evidence as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007.

Because the burden of proof at trial is heightened, the standard of review on appeal is likewise heightened. *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam). In reviewing a legal sufficiency challenge, we must determine whether the

7

evidence is such that the factfinder could reasonably form a firm belief or conviction about the truth of the matter sought to be proved. *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We consider the evidence in the light most favorable to the finding under review. *In re J.F.C.*, 96 S.W.3d at 266. The factfinder is the sole arbiter of the witnesses' credibility and demeanor, so we must defer to the trial court's factual determinations. *In re J.F.-G.*, 627 S.W.3d at 312; *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *In re J.F.-G.*, 627 S.W.3d at 312 (quoting *In re J.F.C.*, 96 S.W.3d at 266). We may not, however, disregard undisputed facts that do not support the finding. *In re J.F.C.*, 96 S.W.3d at 266.

In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction concerning the finding, then the evidence is factually insufficient. *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266). We must give due deference to the factfinder's findings, and we should not substitute our judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).

8

Only one predicate finding under section 161.001(b)(1) is necessary to support a termination judgment when there is also a finding that termination is in the children's best interest. *In re A.V.*, 113 S.W.3d at 362. Thus, if the trial court finds multiple predicate grounds, we may affirm on any one ground because only one is necessary for termination. *In re J.G.S.*, 574 S.W.3d 101, 115 (Tex. App.—Houston [1st Dist.] 2019, pet. denied).

## B.    *Law Concerning Trial by Consent*

Under Texas Rule of Civil Procedure 301, a trial court's judgment must conform to the pleadings. TEX. R. CIV. P. 301; *In re K.S.*, 448 S.W.3d 521, 533 (Tex. App.—Tyler 2014, pet. denied); *see also Vasquez v. Tex. Dep't of Protective & Regul. Servs.*, 190 S.W.3d 189, 194 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (holding that termination order can be upheld only on grounds both pleaded by petitioner and found by trial court). A party's pleadings invoke the trial court's jurisdiction, and a judgment that is not supported by the pleadings is void. *Guillory v. Boykins*, 442 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *In re S.A.A.*, 279 S.W.3d 853, 856 (Tex. App.—Dallas 2009, no pet.). However, unpleaded claims or defenses that are tried by express or implied consent of the parties are treated as if they had been raised by the pleadings. *In re K.S.*, 448 S.W.3d at 533 (citing *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991)); *see* TEX. R. CIV. P. 67.

Trial by consent "can cure lack of pleading, but an issue is not tried by consent merely because evidence regarding it is admitted." *Bos v. Smith*, 556 S.W.3d 293, 306–07 (Tex. 2018). To determine whether an issue was tried by consent, the court must examine the record not for evidence of the issue, but rather for evidence of *trial* of the issue. *Id.* at 307 (quotation omitted); *In re A.B.H.*, 266 S.W.3d 596, 600 (Tex. App.—Fort Worth 2008, no pet.). A party consents to trial of an unpleaded issue when evidence on the issue is developed under circumstances indicating that both parties "understood what the issue was in the case, and the other party failed to make an appropriate complaint." *In re K.S.*, 448 S.W.3d at 533; *In re A.B.H.*, 266 S.W.3d at 600; *see Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009) ("When both parties present evidence on an issue and the issue is developed during trial without objection, any defects in the pleadings are cured at trial, and the defects are waived."). If a party allows an issue to be tried by consent and does not raise the lack of pleading before submission of the case, the party may not raise the pleading deficiency for the first time on appeal. *In re K.S.*, 448 S.W.3d at 533.

"Trial by consent is intended only in the exceptional case where the record clearly reflects the parties' trial of an issue by consent." *In re S.A.A.*, 279 S.W.3d at 856; *see Guillory*, 442 S.W.3d at 690. An issue is not tried by consent if the evidence presented on that issue is also relevant to other issues raised by the pleadings. *King v. Lyons*, 457 S.W.3d 122, 127 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The

10

trial-by-consent doctrine is "not intended to establish a general rule of practice," and it "should be applied with care." *Guillory*, 442 S.W.3d at 690. The doctrine should not be applied in a "doubtful situation." *In re S.A.A.*, 279 S.W.3d at 856; *In re A.B.H.*, 266 S.W.3d at 600.

The trial court has broad discretion in determining whether an unpleaded issue has been tried by consent. *In re K.S.*, 448 S.W.3d at 533. The trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Id.* at 533–34.

## C. *Whether Parties Tried Termination Under Section 161.001(b)(1)(C) By Consent*

### 1. Procedural History

Father and Mother engaged in several years of litigation before the proceedings that formed the basis of this appeal. In December 2017, the trial court entered an agreed order that, among other things, established Father's paternity over Isabelle, set out Father's possession and access rights, and imposed a child and medical support obligation on him. The court required Father to pay monthly child support and medical support. After Father failed to comply with his support obligation, Mother filed a motion for enforcement of the child support order. In December 2018, the trial court confirmed Father's arrearages and reduced his child support obligation. The trial court also held Father in contempt and placed him on probation for two years.

11

In January 2020, Mother moved to modify the parent-child relationship. In her modification petition, which she supported with an affidavit, Mother alleged that Father used drugs, had been arrested for possession of methamphetamine, and had marijuana in his car while driving with Isabelle. Mother requested that she be named as Isabelle's sole managing conservator. She also requested that Father "have no possession of the child as his continued drug use is endangering the child's physical well being."

Father did not file an answer to Mother's modification petition, and the trial court entered a default modification order. The trial court appointed Mother as sole managing conservator of Isabelle and Father as possessory conservator. The court also ordered that Father will have "no possession and access of the child . . . until order is further modified by the Court."

The proceedings underlying this appeal began in March 2021, when Father filed a petition to establish paternity. He later amended his petition, arguing that his child support obligation should be modified and he should be named a joint managing conservator. He also requested "supervision" so he could spend time with Isabelle and that the court make "appropriate orders" for "access to the child and the allocation of the rights and duties of the conservators."

In June 2021, Mother moved to terminate Father's parental rights to Isabelle. She alleged one statutory predicate ground for termination: Father failed to support

12

Isabelle in accordance with his ability during a period of one year ending within six months of the date of filing the termination petition. *See* TEX. FAM. CODE § 161.001(b)(1)(F). She also alleged that termination of Father's parental rights would be in Isabelle's best interest. Father answered and filed a general denial. Mother did not file an amended petition asserting any other statutory predicate grounds for termination.

The trial court held a hearing on November 29, 2021. The volume of the reporter's record for this hearing is entitled "Motion Hearing." At the beginning of the hearing, the trial court stated on the record:

> The attorneys and the parties are here. We had some discussion off the record. Where I think we are now is the current arrearage that [Father] owes between child support and medical support as of today is $25,914.51.

> The Attorney General's office was included in an email setting this today. They're not here today, and I would want to get with them and find out if any percentage of that is government assistance. So, we may have to include that in an e-mail to get confirmation from them.

> When we talked with the attorneys, one of the issues that was discussed was a supervised visitation between [Father] and [Isabelle]; and, unfortunately, all the time we took trying to do this, we only have about 45 minutes left. So, I just want to limit the testimony right now as to whether or not a supervised visitation is either a good thing or a bad thing.

After asking the attorneys to identify the witnesses they intended to call on that issue, the court also stated, "So, I want to really limit things just on one issue, on whether

or not it's worth on a trial basis to set up supervised visitation between [Isabelle] and her father."

The trial court then addressed Father's counsel and stated, "[S]ince you'd be the one asking for some supervised visitation, I'll let you call your witness first; and, like I said, we'll probably have to present your case in about 15 minutes or so as to why that would be a good thing for [Isabelle]." Father then testified. His testimony addressed an in-person visit with Isabelle in March 2021, a FaceTime conversation with her in early November 2021, and his residence at a drug rehabilitation facility for most of 2021. He testified that he was currently living with his aunt. He also stated that he would be willing to participate in a supervised visitation program.

On cross-examination, Mother's counsel questioned Father about his history of not complying with his child support obligation. Father agreed that he had missed many of his required payments, although he had made some payments, particularly when he received government stimulus payments. Mother's counsel also questioned Father about his history of drug abuse. Father agreed that, at one point, he had alcohol in the car while he was driving with Isabelle. He also agreed that, in May 2021, he was placed on deferred adjudication for three years for possession of a controlled substance. He further agreed that, in the past, he had violated probation conditions.

After Father's testimony, the trial court questioned him further about the circumstances of his March 2021 visit with Isabelle. Father testified that Isabelle was happy to see him, they played with her toys, and the visit "went well."

Mother then testified about the March 2021 visitation. Mother agreed that Isabelle was pleased to see Father, but she was "very emotional" after the visit. Mother testified that Father's tendency to be in and out of Isabelle's life affected her in a negative way, and she did not fully understand why he would be absent for periods of time. Isabelle was doing "exceptionally well" in school, her grades were "nearly perfect," and Mother tried to keep her busy with activities "to ensure that she is not missing a single thing in her life."

Mother had the following exchange with her counsel:

Q. We've had to be back and forth in front of this Court numerous times; and it's always been because of [Father's] actions; is that correct?

A. Correct.

Q. It's always been breaking the law again this time or going to jail this time, right?

A. Right.

Q. And is that what—and on top of that, because of those actions, he's not able to see [Isabelle] and support [Isabelle], correct?

A. Right. Uh-huh.

Q. And is that why you're asking this Court to grant the termination to where this roller coaster can stop and her emotional well-being is not affected in a negative way anymore?

A. Yes.

On cross-examination, Mother agreed that Isabelle would be happy to see Father and Father's parents. Father's counsel attempted to ask Mother about her own alleged drug usage around the time she met Father. The trial court sustained Mother's objection and stated, "Right now I'm just trying to decide if there should be supervised visitation." After Father's counsel started to explain his rationale for the question, the court stated, "And, again, if there is or is not going to be supervised visitation between [Father] and [Isabelle], [Mother's] past activities are irrelevant to that." Mother was not willing to give Father any more chances at parenting Isabelle.

On re-direct examination, Mother agreed with her counsel that she has "to keep picking up the pieces of [her] little daughter when [Father] screws up the next time and isn't around for six months to two years or whatever it may be if he gets in trouble again on probation." Counsel asked Mother:

> Is that why you're asking this Court to just keep the order—visitation order that's in place, which is no—no visitation if they're not going to terminate today and let him catch up on support if he's really going to try or to just terminate today? Is that what you're requesting?

Mother responded, "[Y]es, I'm requesting a termination." In an exchange with the trial court, Mother stated that she was not comfortable with the idea of taking Isabelle for supervised visitation at a facility because any required security at the facility might be traumatic for Isabelle. Mother was not in favor of any in-person visits between Isabelle and Father.

After Mother's testimony, the trial court asked whether Father's counsel wanted to call any other witnesses "if [counsel] think[s] they could add to this issue of supervised visitation or not." Father called his mother, Julie, to testify. Julie testified that she was willing to supervise Father's visitations with Isabelle. She was present during the March 2021 visitation, and she believed that Father and Isabelle "get along great" and Isabelle "enjoys all the time she gets to spend with him." She did not witness Isabelle display any signs of trauma or distress. Julie stated, "I'll support [Father] however I need to in order to be able to see our granddaughter." On cross-examination, Julie testified that she was not willing to pay Father's child support obligation for him, but she intended to make sure that Father got a job and paid child support.

Mother called her mother, Michelle, to testify. Michelle testified that Isabelle had difficult sleeping after visits with Father. She agreed with Mother's counsel that Isabelle had experienced emotional trauma "from the roller coaster that [Father has] put her life on in the last couple of years." Michelle agreed that Isabelle does poorly in school if she sees Father and then does not see him "for months at a time." She believed that continued visits with Father would negatively impact Isabelle.

After Michelle's testimony, the trial court stated:

Well, I'm going to contact with the AG's office and try to clarify the issue of child support and if the AG is really interested in collecting any money on their behalf. So, I'll find that out and consider whether or not I'll have some supervised visitation on a short term basis or not. So, as

17

of right now until I can rule on that, the current order stays in place; and then I'll let the attorneys know about any modifications. That's it for today. Thank you.

The court then recessed the hearing.

The trial court's docket sheet reflects that no further hearings occurred in the case. After the November 2021 hearing, Father filed several documents with the trial court, including a notice that he had obtained employment in January 2022. On January 28, 2022, Father's counsel filed a letter that he had sent to Mother's counsel and counsel for the Attorney General's office. In this letter, counsel stated that Father had obtained employment and that Julie was willing to pay $10,000 to reduce Father's support arrearages if Mother would agree to dismiss the termination petition, establish a possession schedule, and allow Julie and her husband to have regular visitation with Isabelle. Counsel stated that Father was willing to agree to supervised visitation.

On March 25, 2022, the trial court signed an order terminating Father's parental rights. The order stated that Mother's termination petition was heard by the court on November 29, 2021.[2] The trial court found, by clear and convincing evidence, that Father:

---

[2]     The order also stated that a record of the proceeding "was waived by the parties with the consent of the Court." The appellate record, however, does include a transcript of the November 29, 2021 hearing.

18

I. voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months and

II. failed to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of this petition.

*See* TEX. FAM. CODE § 161.001(b)(1)(C), (F). The court also found that termination of Father's parental rights was in Isabelle's best interests. Father did not file any post-judgment motions.

### 2. Analysis

Mother acknowledges that she did not plead the predicate ground of abandonment—Family Code section 161.001(b)(1)(C)—in her termination petition. *See id.* § 161.001(b)(1)(C) (providing that court may terminate parental rights if it finds by clear and convincing evidence that parent "voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months"). She argues, however, that the trial court properly terminated Father's parental rights based on this predicate ground because the issue was tried by consent at the November 2021 hearing. We disagree.

The trial court repeatedly stated during the November 2021 hearing that it was only hearing evidence on the question of whether Father should be granted supervised visitation with Isabelle during the pendency of Mother's termination petition. Evidence of Father's past conduct—including his prior visitations with

19

Isabelle, the frequency of his visits with Isabelle, his history of using drugs, his criminal history, and his willingness and ability to comply with court orders—was relevant to that question.

Neither Mother nor her counsel stated at the hearing that they intended to seek termination based on subsection (C). The closest Mother and her counsel come to referencing subsection (C) is this exchange that Mother had with her counsel:

> Q. We've had to be back and forth in front of this Court numerous times; and it's always been because of [Father's] actions; is that correct?
>
> A. Correct.
>
> Q. It's always been breaking the law again this time or going to jail this time, right?
>
> A. Right.
>
> Q. And is that what—and on top of that, because of those actions, he's not able to see [Isabelle] and support [Isabelle], correct?
>
> A. Right. Uh-huh.
>
> Q. And is that why you're asking this Court to grant the termination to where this roller coaster can stop and her emotional well-being is not affected in a negative way anymore?
>
> A. Yes.

It is not clear from this testimony, however, that Mother desired to assert subsection (C) as a predicate ground for termination in addition to subsection (F), which also focuses on a parent's support of their child, and which Mother had pleaded.

Mother later stated in her testimony that she was opposed to Father having supervised visitation, and she was requesting termination of Father's parental rights.

20

After this testimony, however, the trial court asked the parties whether they had any additional witnesses who could present testimony relevant to the supervised visitation question. The trial court concluded the hearing by stating that it wished to confer with the Attorney General's Office, and then it would decide whether Father would be allowed supervised visitation with Isabelle. We agree with Father that, in the context of the hearing as a whole, Mother's references to requesting termination are best understood as her stating her opposition to supervised visitation. Mother did not want to give Father any further chances at visitation with Isabelle; she wanted his parental rights terminated. Her statements are not, however, an indication that the trial court considered the November 2021 hearing to be the final trial on the merits of Mother's termination petition.

Father acknowledges that evidence relevant to subsection (C) was presented at the November 2021 hearing. However, in determining whether an issue was tried by consent, we examine the record not for evidence of the issue, but for evidence of *trial* of the issue. *Bos*, 556 S.W.3d at 307; *In re A.B.H.*, 266 S.W.3d at 600. A key component of this inquiry is whether the evidence is developed under circumstances indicating that both parties "understood what the issue was in the case, and the other party failed to make an appropriate complaint." *In re K.S.*, 448 S.W.3d at 533; *see Ingram*, 288 S.W.3d at 893. Mother's statements about requesting termination are not an indication that both she and Father understood that she was now asserting

subsection (C) as an additional, unpleaded predicate ground for termination. *See, e.g.*, *In re K.S.*, 448 S.W.3d at 533.

We should only apply the trial-by-consent doctrine in "exceptional" cases where the record clearly reflects that the parties tried an unpleaded issue by consent. *In re S.A.A.*, 279 S.W.3d at 856; *see Guillory*, 442 S.W.3d at 690. We should not apply the doctrine in a "doubtful situation." *In re S.A.A.*, 279 S.W.3d at 856. We conclude that this case is not an "exceptional case" in which the record clearly demonstrates that the parties tried the issue of whether Father's parental rights should be terminated under the unpleaded ground of section 161.001(b)(1)(C) by consent. *See id.* The record instead reflects that the November 2021 hearing was solely a hearing on whether Father should be allowed supervised visitation with Isabelle and was not a final trial on the merits of Mother's termination petition. Moreover, although evidence relevant to subsection (C) was presented at the hearing, it was not clear that both Mother and Father understood that Mother sought termination under subsection (C) in addition to the pleaded predicate ground of subsection (F). *See In re K.S.*, 448 S.W.3d at 533; *In re A.B.H.*, 266 S.W.3d at 600.

We hold that the trial court erred by finding, in its termination order, that Father violated subsection (C) because Mother did not plead subsection (C) as a predicate ground for termination and the parties did not try the issue by consent at the November 2021 hearing. *See* TEX. R. CIV. P. 301 (providing that judgment "shall

conform to the pleadings"); *Guillory*, 442 S.W.3d at 690 (stating that judgment unsupported by pleadings is void).

Father also argues in his first issue that the trial court erred by rendering the final termination order because Family Code subsection 161.001(b)(1)(F)—the predicate ground pleaded by Mother in her termination petition and the other ground found by the trial court in its termination order—was not supported by legally or factually sufficient evidence. We need not address whether sufficient evidence supports this finding because, as we have concluded above, the November 2021 hearing was a hearing solely on supervised visitation. It was not a final trial on the merits of the termination petition. The appellate record does not reflect that any other evidentiary hearing occurred after the November 2021 hearing. Because the trial court expressly limited the November 2021 hearing to the question of supervised visitation, and the court did not hold any further hearings or a final trial on the merits of Mother's termination petition, we hold that the trial court erred by rendering the order terminating Father's parental rights. *See* TEX. FAM. CODE § 105.003(a) (providing that in suits affecting parent child relationship, which include suits to terminate parental rights, "proceedings shall be as in civil cases generally"); *see also id.* § 161.202 (providing that, in termination proceedings, party may move "for a preferential setting for a final hearing on the merits").

We sustain Father's first issue.[3]

## Conclusion

We reverse and remand the case for further proceedings.

April L. Farris
Justice

Panel consists of Justices Goodman, Countiss, and Farris.

---

[3] Because we sustain Father's first appellate issue and remand the case for a new trial, we need not address Father's second and third appellate issues because these issues would not grant Father greater relief. *See* TEX. R. APP. P. 47.1 (providing that court of appeals must hand down written opinion that addresses "every issue raised and necessary to final disposition of the appeal").

24