

NUMBER 13-18-00385-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ZINA BURKETT,                                                          Appellant,

v.

JASON A. BURKETT,                                                     Appellee.

## On appeal from the 430th District Court of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Hinojosa
Memorandum Opinion by Chief Justice Contreras**

This is an appeal of a judgment rendered to enforce the provisions of a divorce

decree and settlement agreement. Appellant/cross-appellee Zina Burkett raises three

issues, arguing principally that the trial court erred by modifying an earlier enforcement

order after it had lost plenary power. Appellee/cross-appellant Jason A. Burkett raises

six issues, contending that various aspects of the trial court's order were erroneous. We affirm in part and reverse and remand in part.

## I. Background

The parties were married in 1996 and had two sons, born in 1998 and 2000. Zina filed for divorce in 2011, and the parties signed an "Agreement Incident to Divorce" (AID) in December of that year. The AID provided in part that Jason will pay $860,000 to Zina to equalize the just and right division of property[1] and that, when Jason sells his McAllen dental practice, the net proceeds of the sale shall be divided equally between the parties. It further stated that Jason will pay Zina $8,000 per month for thirty-six months as alimony, beginning on the fifteenth day of the first month following the closing of the sale of the parties' residence.[2] The AID did not contain any agreement regarding child support.

After a hearing on December 12, 2011, the trial court rendered a final divorce decree which incorporated the AID by reference.[3] The decree also contained a standard possession order for the parties' access to the children, and it required Jason to pay monthly child support and medical expenses to Zina.[4] Both parties signed the decree under a statement indicating that they approved and consented to its form and substance,

---

[1] The AID stated that the property division payments will be made in installments of $10,000 for each month from January 1, 2012 to May 31, 2017; and installments of $5,000 for each month from June 1, 2017 to November 30, 2020.

[2] The AID stated that Zina is entitled to receive all of the net proceeds from the sale of the residence.

[3] In a section entitled "Division of Marital Estate," the decree stated:

The Court finds that the parties have entered into an [AID], in a document separate from this Final Decree of Divorce. To the extent provided by law, the Court approves the agreement and incorporates it by reference as part of this decree as if it were recited herein verbatim and orders the parties to do all things necessary to effectuate the agreement. A copy of the agreement is not filed with the records of this Court.

The AID was not attached as an exhibit to the decree, but it was attached to Zina's 2017 motion to enforce.

[4] Specifically as to child support, the decree required Jason to pay $2,000 per month until one of the parties' children reaches the age of eighteen, marries, or dies; and $1,000 per month thereafter, until the other child reaches the age of eighteen, marries, or dies.

2

and neither party appealed the decree.

Zina moved to enforce the decree in 2015. Following a mediation, the parties and their attorneys executed a settlement agreement (MSA) on June 13, 2016, which stated that the parties had reached an "agreement for enforcement" which was attached as an exhibit to the MSA. Exhibit A to the MSA stated in its entirety as follows:

Agreement for Enforcement of Child Support Arrearage satisfies the Alimony, Arrearage and Property Division Arrearage.

The parties agree to the following:

1.  [Jason] agrees to pay [Zina] the sum of $760,000.00 incurring 4 ½ percent interest on any unpaid balance in child support arrearage until paid in full as follows:

    a.  $5,500.00 commencing July 1, 2016 thru December 1, 2016

    b.  $6[,]000.00 from January 1, 2017 thru June 1, 2017

    c.  $6,500.00 from July 1, 2017 thru December 31, 2017

    d.  $7,500.00 from January 1, 2018 until paid in full.

2.  The Judgment shall be secured with a lien and deed of trust on the office buildings [used for Jason's dental practice and the parties' South Padre Island condominium]

3.  Contractual Alimony in the amount of $125,000.00 which shall be paid at the rate of $1[,]000.00 at (0) percent interest. Said payment is incorporated in the payment schedule above.

4.  Health Insurance: Husband to reimburse wife $140.84 per month commencing July 1, 2016 and on the 1st of each month thereafter until the youngest child emancipates in accordance with the decree.

. . . .

Save and except any property in which the IRS has a lien on the property, if a property is sold the net proceeds shall be paid toward[]s the child support arrearage owed in this agreement.

All other provisions of the decree or incident to divorce [sic] remain in full force and effect.

Zina subsequently moved the trial court to enter judgment on the MSA. After a

3

hearing on August 31, 2016, at which only Zina and her attorney appeared, the trial court

rendered a judgment (the 2016 Order) stating in relevant part as follows:

### Agreement of Parties

The Court finds that the parties have entered into a written agreement as contained in this order by virtue of having approved this order as to both form and substance.  To the extent permitted by law, the parties stipulate the agreement is enforceable as a contract.  The Court approves the agreement of the parties as contained in this "Order".

### Merger of Settlement Agreement

The agreements in this "ORDER" were reached in mediation.  This "Order" is stipulated to represent a merger of a [MSA] between the parties.  To the extent there exist any differences between the [MSA] and this "Order", this "Order" shall control in all instances.

### Findings

The Court finds that on December 12, 2011, the court rendered and signed the Final Decree of Divorce on January 4, 2012 [sic] and was ordered to make a payment of child support [sic] in Cause No. **CAUSE NO.** [sic] **F-132-11-J** . . . in the 430TH JUDICIAL DISTRICT Hidalgo County, Texas, and states in relevant part as follows [sic]:

[recites child support provisions from MSA as set forth above]

The Court further finds that [Jason] has failed to comply with the provisions of the [decree] as follows.  The court finds and confirms that the balance owed by [Jason] on previously confirmed child support arrearage and the property division that [Jason] failed to pay.  The parties agreed to modify the terms of the property division and include it as child support arrearage as set forth below.

The court find[]s by agreement that the child support arrearage is $760,000.00.  The court further finds that [Jason] is in arrears tin [sic] the amount of $[]760,000.00 for the period February 1, 2012 for all monies due and owing pertaining to child support and property division payments which are now confirmed as child support arrearage.

Judgment should b[e] awarded against [Jason] in the total amount of $760,000,00 for the child support arrerarge [sic] and interest by agreement of the parties.

***Judgment***

IT IS ORDERED that [Zina] is granted a cumulative judgment for child support arrearages, including accrued interest, against [Jason] of $760,000.00 dollars such judgment bearing interest as 4.5% percent simple interest per year form [sic] the date of the date of [sic] the mediation agreement on June 13, 2016. The debt is cumulative and includes the unpaid balance owed under the prior orders of the Court except for the contractual alimony in Cause No. NO. [sic] **F-132-11-J** . . .in the 430TH JUDICIAL DISTRICT Hidalgo County, Texas, dated December 21, 2011.

IT IS ORDERED THAT [Jason] SHALL pay [Zina] the sum of Seven hundred and sixty thousand ($760,000.00) at 4 ½ % percent interest on any unpaid balance on child support arrearage until paid in full as follows:

    a.    $5,500.00 commencing July 1, 2016 thru Decem[]ber 1, 2016

    b.    $6,000.00 from January 1, 2017[ ]thru June 1, 2017

    c.    $6,500.00 from July 1, 2017 thru December 31, 2017

    d.    $7,500.00 from January 1, 2018 until paid in full

Special Provision: $1[,]000.00 dollars of each of these payments that are made in full shall be credited towards the contractual alimony payment.

The Judgement shall be secured with a lien and deed of trust on the office building[s used for Jason's dental practice and the parties' South Padre Island condominium]

***Contractual Alimony***

Contractual Alimony in the amount of $125,000.00 which shall be paid at the rate of $1000.00 per month commencing July 1, 2016 and the 1st of each month thereafter at (0) percent interest until paid in full. Said payment is incorporated in the payment schedule above in the judgment language.

***Health Insurance***

Health Insurance: [Jason] to reimburse [Zina] $140.84 per month commencing Ju[l]y 1, 2016 and on the 1st of each month thereafter until the youngest child emancipates in accordance with the decree.

(Emphasis in original.)[5] The 2016 Order was not signed by the parties or their attorneys,

---

[5] The August 31, 2016 order stated that Jason "appeared in person and through counsel of record . . . and announced ready for trial." However, the parties agree that only Zina and her attorney appeared at the hearing on that date.

and it was not appealed.

Zina filed a "Motion For Enforcement Of Child Support Order And Order To Appear And Motion To Compel Property Division" on March 3, 2017. In this motion, Zina asserted that Jason failed to make complete, timely payments as required by the MSA for the months of November 2016 through February 2017, and that he failed to make any payments for the months of July through October 2016 and March 2017. The motion also alleged that Jason failed to comply with the AID's provision requiring him to pay to Zina half of the net proceeds arising from the sale of the dental practice. Zina asserted in an amended motion filed on January 10, 2018, that Jason must pay $114,874.89 to become current on his payments and that his total arrearage is $759,374.89. She asked the trial court to confirm the arrearages, to order Jason's income withheld to pay those amounts, and to hold Jason in contempt.

In response, Jason argued, among other things, that the 2016 MSA constituted a novation of the 2011 AID and, therefore, the AID is no longer enforceable. He argued:

> In exchange for accepting a sum certain . . . , Zina promised Jason that she would dismiss all her pending claims, including, but not limited to: current child support, Child Support Arrearages, the Alimony Arrearages, and all Property Division Arrearages including any proceeds allegedly due from the sale of the dental practice against Jason and that all those claims that in fact settled and were incorporated into the MSA.
>
> . . . .
>
> In the MSA, th[e] aggregate amount of $760,000.00 included any amounts allegedly owed from the sale of the practice and was a material consideration in the inducement for Jason to enter into the MSA and Jason would not have entered into the MSA had he been aware that the sale of the dental practice was not a part of the MSA.
>
> . . . .
>
> At the time of the MSA [Jason] was in arrearages in the principal amount of $7,000.00. . . . The 8/31/16 Order confirming child support arrearages make[s] the incredible finding that the child support arrearages is

6

$740,000.00. The entire amount of child support ordered by the Court from the commencement of child support obligations through the majority of the youngest child only totals $130,000.00.

Jason further argued that the 2016 Order is void and unenforceable because it altered the terms of the MSA; that Zina's attorney committed fraud by representing to the court that the 2016 Order accurately reflected the terms of the MSA; that "there has been a negative material change" in Jason's income since 2016; and that Jason is "not only current with his child support obligations" but has "overpaid" those obligations "by more than $26,279.53, which he is requesting to be returned to him."

After two hearings in January 2018, the trial court rendered an "Order Holding [Jason] in Contempt, Granting Judgment and Suspending Commitment" on June 19, 2018 (the 2018 Order), which is the subject of this appeal. In the 2018 Order, the court found that Jason failed to timely pay child support as ordered "in 6 out of 19 months" despite having sufficient funds, and it held Jason in civil contempt.[6] The order set forth the lump sum payment provisions from the MSA and the 2016 Order, and it further stated in relevant part:

18.  In accordance with the Texas Family Code § 157.263 the Court renders on [sic] cumulative judgment on child support and child support arrearages as follows.

19.  The Court finds that [Jason] was ordered to pay child support as stated in the Final Decree of Divorce in the amount of $2,000.00 per month, until 5/1/17 and $1,000.00 per month thereafter until the youngest child was emancipated.

20.  The Court finds that [Jason] was ordered to pay of [sic] child support as ordered in the Final Decree of Divorce from the commencement of the child support order thru 6/1/16 in the amount of $108,000.00.

---

[6] The order stated that Jason shall be confined in the county jail for not more than ninety days, to be served on weekends; that the jail sentence is suspended and he is placed on community supervision until July 1, 2019; and that Jason may purge the contempt and jail sentence if he timely pays child support and fees to Zina as ordered.

7

21. The Court finds that [Jason] had paid a total of $76,000.00 in child support and that on 7/1/16 [Jason] was in child support arrearages in the amount of $32,000.00.

22. The Court finds that [Jason] was order[ed] to pay child support as ordered in the Final Decree of Divorce from 7/1/16 thru 2/1/18 in the amount of $30,000.00.

23. The Court finds that from 7/1/16 thru 2/1/18 that [Jason] was ordered [to pay] medical support to [Zina] at the rate of [$]140.84 per month, for a total obligation of $2,675.96.

24. The Court finds that the total amount of interest that [Jason] was ordered to pay on the child support and the medical support thru 2/1/18 totaled $1,200.00.

25. The Court finds that from 7/1/16 thru 2/1/18 [Jason] was ordered to pay the total amount of $33,875.96 in child support, medical support and interest thereon.

26. The Court finds that the total amount of child support from the commencement of the child support, medical support and interest thereon, thru 1/1/18 that [Jason] owed to [Zina] totaled $65,875.96.

27. The Court finds that since 7/1/16 [Jason] has paid a total of $84,645.51 in child support, medical support and interest thereon.

28. The Court finds that since the commencement of [Jason]'s obligations to pay child support, medical support and interest thereon, thru 2/1/18 totaled $141,875.96.

29. The Court finds that since the commencement of [Jason]'s obligations to pay child support, medical support and interest thereon, thru 2/1/18, [Jason] has paid a total of $160,645.51 in child support, medical support an[d] interest thereon.

30. The court finds that as of March 1, 2018 [Jason] has paid more than the total amount of child support as ordered in the Final Decree of Divorce and that the amount of child support arrearages owed by [Jason] to [Zina] is Zero Dollars ($0.00)

31. The Court finds that the balance of $18,769.55 that [Jason] has paid has been credited to the judgment for breach of contract for unpaid property division and unpaid contractual alimony as set forth below.

. . . .

39. The Court finds that this judgment is cumulative of any money judgment previously issued by this Court.

8

40. The Court finds that [Zina] should have judgment and recover from Jason Burkett the amount of $1,144,153.48, as set forth below:

    a. $657,325.29 from her claims for breach of contract for the unpaid property division and unpaid contractual alimony[7]; and;

    b. $479,327.99 for her claim for breach of contract under the Agreement Incident to Divorce, from the ½ net proceeds from the sale of the dental practice[8].

41. In accordance with Section 157.264 of the Texas Family Code, beginning the 1st day of the month following the date of this Judgment, [Jason] is ordered to make periodic payments on this Judgment in the amount of $2,500 per month through May 2019, increasing to $4,000 per month in June 2019 until such Judgment is paid in full. Except for the $140.84 in medical support that [Jason] is still required to pay, [Jason] is no longer required to pay the $7,500 monthly payment for child support arrearage or the $1,000 monthly payment for contractual alimony set forth in the [2016 Order].

The court additionally found that Jason had attempted to transfer ownership of the parties' South Padre Island condominium to his father, James Burkett, "to evade paying" child support, and it ordered that property to be judicially foreclosed in favor of Zina. Finally, the order awarded Zina $7,500 in attorney's fees.

Both parties perfected appeals from the 2018 Order.

## II. DISCUSSION

### A. Standard of Review

A trial court's decision to grant or deny the relief requested in a motion for enforcement is reviewed for an abuse of discretion. *Chenault v. Banks*, 296 S.W.3d 186,

---

[7] The order explained that Jason sold the dental office buildings on January 19, 2017, resulting in net proceeds of $312,032.09, and that "because [Zina] had a lien on the proceeds from this office building and there was no IRS lien on the building, the net sales proceeds should have been paid to [Zina] to reduce the amount of the $760,000 child support arrearage" as set forth in the 2016 Order.

[8] The order explained that Jason sold his dental practice on January 1, 2015, resulting in net proceeds of $1,558,655.98; that Zina was entitled to half of that amount ($779,327.99); that Jason had paid Zina $300,000 on February 11, 2015; and therefore, that Jason is ordered to pay her an additional $479,327.99.

189 (Tex. App.—Houston [14th Dist.] 2009, no pet.). A court abuses its discretion when it acts without reference to any guiding rules or principles, or fails to analyze or apply the law correctly. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). Legal and factual sufficiency of the evidence are relevant factors in determining whether the trial court abused its discretion, but they are not independent grounds of error. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied).

## B. Zina's Issues

### 1. Improper Collateral Attack on 2016 Order

By her first two issues, Zina contends that the trial court erred by "modifying" the 2016 Order. She posits that the 2018 Order "made two significant changes" to the 2016 Order: (1) it "reduced the amount of the child support arrearage judgment owed as of July 1, 2016 from $760,000 to $32,000" and (2) it "eliminated $5,500 to $7,500 in monthly payments Jason was required to pay on the child support arrearage judgment." Zina claims that, as a result of these "changes," she received $115,500 less than she was entitled to between July 1, 2016, and January 2018, when the trial court heard her latest motion to enforce.

Zina argues by her first issue that the trial court lacked legal authority to modify the 2016 Order under Texas Family Code § 153.0071(e), which states generally that a party is entitled to judgment on an MSA if it meets certain requirements. *See* Tex. Fam. Code Ann. § 153.0071(e). She further contends that the 2016 Order is not subject to collateral attack because it is not void. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010) (noting that a void order is subject to collateral attack while a voidable order must be attacked directly). By her second issue, Zina argues that the 2018 Order is itself void because the trial court lost plenary power to modify the 2016 Order thirty days after

the 2016 Order was signed. *See* Tᴇx. R. Cɪᴠ. P. 329b(d) ("The trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment within thirty days after the judgment is signed."); *In re Parker*, 117 S.W.3d 484, 487 (Tex. App.—Texarkana 2003, no pet.) (holding that the trial court's order vacating a final divorce decree is void because the trial court's plenary power had expired). She notes that Jason failed to appear at the August 31, 2016 hearing and did not perfect any appeal from the 2016 Order.

In response to Zina's first two issues, Jason contends that the terms of the MSA were "illegal" and therefore, the 2016 Order was void and subject to collateral attack. Specifically, he argues that the MSA violated § 157.263 of the family code, which states in part that "[i]f a motion for enforcement of child support requests a money judgment for arrearages, the court shall confirm the amount of arrearages and render one cumulative money judgment" and that "[i]n rendering a money judgment under this section, the court may not reduce or modify the amount of child support arrearages . . . ." Tᴇx. Fᴀᴍ. Cᴏᴅᴇ Aɴɴ. § 157.263(a), (b-1). Jason cites *Williams v. Patton*, in which the Texas Supreme Court noted that, because "child support is a duty owed by a parent to a child, not a debt owed to the other parent," parents may not enter into settlement agreements to "prospectively modify[] court-ordered child support without court approval." 821 S.W.2d 141, 143 (Tex. 1991).[9] The *Williams* Court further held that, until the trial court reduces

_____

[9] The *Williams* Court explained the policy underlying this rule as follows:

> Due to the financial hardships so frequently encountered by the custodial parent following divorce, the failure of the former spouse to pay court-ordered child support puts the custodial parent in a very difficult position. If the non-custodial parent offers to pay a portion of child support arrearages in settlement of the entire amount due, the custodial parent may be persuaded to accept the offer due to present financial difficulties and the possibility of further delay and expense in collecting the unpaid amount.

*Williams v. Patton*, 821 S.W.2d 141, 144 (Tex. 1991).

11

the unpaid amount to written judgment or loses jurisdiction, the applicable statute "prohibits parents from contracting for payment of the arrearages without court approval." *Id.* (observing that "the legislature intended for arrearages to remain under the supervision of the trial court until the court reduces the unpaid amount to written judgment or until the court loses jurisdiction"). Though the *Williams* Court construed an earlier version of the statute that has since been repealed, Jason argues that these tenets of law still apply. *See Ochsner v. Ochsner*, 517 S.W.3d 717, 724 (Tex. 2016) (citing but distinguishing *Williams*); *see also In re E.C.*, No. 13-04-00002-CV, 2005 WL 1244615, at *3 (Tex. App.— Corpus Christi–Edinburg May 26, 2005, no pet.) (mem. op.) (citing *Williams* and § 157.263(a) of the family code).

Assuming but not deciding that *Williams* remains good law, we are nevertheless unpersuaded by Jason's argument that the 2016 MSA was "illegal" so as to render the 2016 Order void and subject to collateral attack. The cases cited by Jason merely establish that an agreement by parents to modify a child support arrearage is unenforceable *unless approved by the court*. *See Ochsner*, 517 S.W.3d at 724; *Williams*, 821 S.W.2d at 143; *see also In re E.C.*, 2005 WL 1244615, at *3. The 2016 Order explicitly stated that "[t]he Court approves the agreement of the parties as contained in this 'Order'." Accordingly, even if the MSA modified Jason's child support arrearages— and even if that modification was detrimental to the interests of the children—that would still not mean that the 2016 Order is illegal or void.

In general, as long as the court entering a judgment has jurisdiction of the parties and the subject matter and does not act outside its capacity as a court, a judgment is not void. *Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003) (citing *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990)). Errors other than lack of jurisdiction, such as "a court's

action contrary to a statute or statutory equivalent," merely render the judgment voidable so that it may be "corrected through the ordinary appellate process or other proper proceedings." *Id.* (citing *Mapco, Inc.*, 795 S.W.2d at 703). In *Reiss*, a divorce decree incorrectly characterized certain funds as community property, but because the ex-husband did not appeal the decree, the decree became final, and he could not later attack it collaterally. *Id.* Similarly, Jason's contention here—i.e., that the 2016 Order was an "action contrary to a statute"—would, even if true, merely render the 2016 Order voidable. Because no party timely appealed the 2016 Order, and because plenary power over that order has since expired, that order cannot now be challenged by collateral attack. *See id.*; *see also* TEX. R. CIV. P. 329b(c).[10]

We sustain Zina's issues. Because the 2016 Order could not be collaterally attacked, the 2018 Order constituted an abuse of the trial court's discretion to the extent that it materially altered the "substantive adjudicative portions" of the 2016 Order. *See Riggins v. Hill*, 461 S.W.3d 577, 582 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (noting that a court has inherent power to enforce its judgment "[b]ut, after its plenary power over a judgment expires, the trial court may not issue an order that is inconsistent with the judgment or that otherwise constitutes a material change in the substantive adjudicative portions of the judgment"); *Schroeder v. LND Mgmt., LLC*, 446 S.W.3d 94, 98 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Comm'n for Lawyer Discipline v.*

---

[10] Theoretically, in addition to a direct appeal, Jason could have also challenged the 2016 Order by petitioning for a bill of review; however, he did not do so in this case. In any event, the record does not reflect that the elements necessary to obtain a bill of review have been established. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751–52 (Tex. 2003) (noting that "[a] bill of review is an equitable proceeding to set aside a judgment that is not void on the face of the record but is no longer appealable or subject to a motion for new trial" and stating that "a bill of review petitioner must ordinarily plead and prove (1) a meritorious defense to the cause of action alleged to support the judgment, (2) that the petitioner was prevented from making by the fraud, accident or wrongful act of his or her opponent, and (3) the petitioner was not negligent").

13

*Denisco*, 132 S.W.3d 211, 215 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *see also Evans v. Frost Nat'l Bank*, No. 05-12-01491-CV, 2015 WL 4736543, at *5 (Tex. App.—Dallas Aug. 11, 2015, no pet.) (mem. op.); *Pope v. Gaffney*, No. 04-05-00413-CV, 2006 WL 1684661, at *2 (Tex. App.—San Antonio June 21, 2006, pet. denied) (mem. op.); *In re Tarrant County*, No. 02-05-00274-CV, 2005 WL 3436582, at *5 (Tex. App.—Fort Worth Dec. 12, 2005, orig. proceeding) (mem. op.).

### 2. Erroneous Portions of 2018 Order

Having found that the 2018 Order was erroneous to the extent it materially altered the substantive adjudicative portions of the 2016 Order, we must next determine which portions of the 2018 Order, exactly, should be reversed for that reason. In her brief, Zina asserts that paragraphs 15, 16, 21, 24, 25, 26, 28, 30, 31, 40(a), and 41 of the 2018 Order should be reversed because they improperly modify the 2016 Order. We agree.

Paragraphs 15 and 16 set forth the findings of the court regarding the amounts Jason owed and the amounts he paid for each of the nineteen months between July 2016 and January 2018, inclusive. However, in calculating the amounts due for each month, the trial court only considered amounts for current child support and medical support; it did not include any amounts attributable to the $760,000 judgment as agreed to in the MSA and memorialized in the 2016 Order. Crucially, the record reflects that the $760,000 figure was intended to consolidate all of the amounts Jason owed as of the date of the MSA for child support arrearages, interest on child support arrearages, and property division. This is made clear by the first line of the MSA, which was incorporated verbatim into the 2016 Order: "Agreement for Enforcement of Child Support Arrearage satisfies

14

the Alimony, Arrearage and Property Division Arrearage."[11]   Although Jason contends that this arrangement contravened the family code, we have already held that it is not void, and therefore, it became final when neither party appealed the 2016 Order and plenary power expired.   Therefore, the trial court abused its discretion by excluding installments on the $760,000 settlement when calculating the amounts due each month in paragraphs 15 and 16.   On remand, the trial court is instructed to recalculate the amounts due for the months at issue under the payment terms set forth in the MSA and the 2016 Order.

Paragraph 21 of the 2018 Order states that, as of July 1, 2016, Jason was in child support arrears in the amount of $32,000.   We agree with Zina that this provision impermissibly modified a substantive adjudicative portion of the 2016 Order and is therefore erroneous.  *See Riggins*, 461 S.W.3d at 582.  Instead, pursuant to the MSA and 2016 Order, the agreed child support arrearage amount as of July 1, 2016 was $760,000 (though this amount includes interest and property division payments, consistent with the parties' agreement).

Paragraphs 24, 25, 26, and 28 of the 2018 Order contain findings regarding the amounts Jason owed for child support, medical support, and interest, for the relevant months.   Paragraph 30 finds that Jason overpaid his child support obligations and paragraph 31 credits the overpayment to the money judgment for "unpaid property division and unpaid contractual alimony."   These amounts were all apparently based at least in part on the figures set forth in paragraphs 15, 16, and 21, which we have

---

[11] The MSA and the 2016 Order both provided that Jason agreed to pay Zina $125,000 in alimony, separate from the $760,000 payment.  Thus, the only reasonable construction of the MSA and the 2016 Order is that the $760,000 figure was intended to consolidate Jason's child support arrearage and property division debts.

concluded were erroneous. Accordingly, paragraphs 24, 25, 26, 28, 30, and 31 are also erroneous and must be recalculated on remand.

Paragraph 40(a) of the 2018 Order sets forth a $657,325.29 judgment attributable to unpaid property division and alimony payments. However, as noted, the $760,000 lump sum detailed in the MSA and 2016 Order was intended to consolidate Jason's property division and child support arrearages into a single monthly obligation. Further, the MSA and 2016 Order separately provide that Jason shall pay $125,000 in alimony, and that $1,000 of each monthly payment shall be attributable to the separate alimony obligation. Jason agreed to the MSA and the 2016 Order is final. Accordingly, paragraph 40(a) is erroneous and must be recalculated on remand.

Finally, paragraph 41 of the 2018 Order sets forth a payment schedule which is based, at least in part, on the other impermissible modifications of the 2016 Order. Accordingly, paragraph 41 is erroneous and a new payment schedule must be formulated on remand. Pursuant to the MSA, the 2016 Order, and the unchallenged findings in the 2018 Order, the new payment schedule must require that Jason pay to Zina: (1) the $760,000 lump sum, representing (a) child support and interest due up until July 1, 2016, and (b) property division equalization; (2) 4.5% annual interest on the $760,000 lump sum from July 1, 2016 until paid in full; (3) $125,000 in alimony; (4) $30,000, representing child support arrearages from July 2016 to February 2018; (5) $2,675.96, representing medical support due from July 2016 to February 2018; (6) interest on the unpaid child support and medical support amounts due from July 2016 to February 2018; and (7) any currently-due child support and medical support owed but unpaid for the months since February 2018, along with interest.

16

**C.      Jason's Cross-Issues**

On cross-appeal, Jason argues the trial court erred by: (1) awarding judgment for breach of the AID; (2) ordering him to pay half of the net proceeds from the sale of the dental practice in monthly installments; (3) ordering judicial foreclosure on the South Padre Island property; (4) ordering a lien on Jason's separate property; (5) ordering Jason's overpayment of child support to offset the breach of contract award; and (6) denying his motion to reopen the evidence.

We have already concluded that several portions of the 2018 Order are erroneous and must be reversed, as set forth above. We address Jason's cross-issues only insofar as they concern provisions of the 2018 Order which we have not already found to be erroneous. *See* TEX. R. APP. P. 47.1.

**1.      Breach of the AID**

Paragraph 2.10(F) of the 2011 AID required Jason to pay Zina half of the net proceeds from the sale of his dental practice. Jason's first cross-issue challenges paragraph 40 of the 2018 Order to the extent that the damages awarded therein are attributable to his alleged violation of paragraph 2.10(F). Jason argues specifically that: (1) the MSA constituted a novation of the AID, thereby precluding enforcement of the AID; (2) the AID is not enforceable due to the doctrine of res judicata; and (3) there was legally and factually insufficient evidence to support the $479,327.99 damages award.

A party relying on the affirmative defense of res judicata must prove: (1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action. *See Travelers Ins. Co.*, 315 S.W.3d at 862. Here, Jason contends the issue of the dental practice proceeds was "previously litigated"

17

in Zina's 2015 motion to enforce, which was resolved by the MSA as memorialized in the 2016 Order. We agree.

Zina's 2015 motion complained of Jason's failure to make timely complete payments on his child support obligations as well as on the original $860,000 property division settlement provided in the AID and in the decree. The $860,000 obligation was set forth in paragraph 2.7 of the AID, entitled "Debt to Accomplish Just and Right Division," which explained that the obligation was "[f]or the purpose of a just and right division of property under this agreement." Zina's 2015 motion also complained of Jason's failure to comply with paragraph 2.10(F) of the AID. Both paragraphs 2.7 and 2.10(F) are part of Article 2 of the AID, entitled "Division of Marital Estate." The MSA, which featured the $760,000 lump sum obligation, was entitled "Agreement for Enforcement of Child Support Arrearage satisfies the Alimony, Arrearage and Property Division Arrearage."

Paragraphs 2.7 and 2.10(F) of the AID both concern property division, and Jason's failure to make timely payments under either provision is therefore properly considered a "Property Division Arrearage." *See Arrears*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "arrears" as "[t]he quality, state, or condition of being behind in the payment of a debt or the discharge of an obligation"). Accordingly, it is apparent that the parties intended the $760,000 payment to supplant and replace the amounts due under *both* paragraphs 2.7 and 2.10(F) of the AID. At the very least, Zina "could have . . . raised" her complaint regarding the past-due payment under paragraph 2.10(F) in the 2015 enforcement proceeding. *See Travelers Ins. Co.*, 315 S.W.3d at 862. Therefore, we conclude that paragraph 40(b) of the 2018 Order, which awarded Zina $479,327.99 as half of the net proceeds from the sale of the dental practice, is barred by the doctrine of

18

res judicata.[12]  Paragraphs 46 and 47 of the 2018 Order, which contained detailed findings as to the $479,327.99 judgment, are erroneous for the same reason.  Jason's first cross-issue is sustained.

### 2.    Judicial Foreclosure

By his third cross-issue, Jason contends the trial court erred in paragraph 49 of the 2018 Order by ordering judicial foreclosure of the parties' South Padre Island condominium.[13]  Jason argues that Zina's live pleadings do not contain any allegations requesting such an award, identifying any specific property to be foreclosed, or identifying any lienholders.  *See Garza v. Allied Fin. Co.*, 566 S.W.2d 57, 62 (Tex. App.—Corpus Christi–Edinburg 1978, no writ) ("A judgment of foreclosure of a chattel mortgage should not be granted unless it has been specifically requested; a general prayer is not sufficient.") (citing *First Baptist Church of Paris v. Fort*, 54 S.W. 892 (Tex. 1900)).  He further contends that he already conveyed the subject property to Manny Garcia in 2017,

---

[12] In light of this ruling, we need not consider Jason's arguments that the judgment for dental practice sales proceeds was barred by novation or insufficient evidence.  *See* TEX. R. APP. P. 47.1.  We also need not consider his second issue, which argues that the trial court erred under the family code in ordering the judgment to be paid in monthly installments; or his fifth issue, arguing that the trial court erred in transferring his alleged overpayment of child support to offset the breach of contract award.  *See id.*; TEX. FAM. CODE ANN. § 157.264.

[13] Paragraph 49 stated:

The Court also orders that the condominium on South Padre Island is hereby judicially foreclosed in favor of [Zina].  The February 28, 2017 Warranty Deed with Vendor's Lien on such condominium was signed by grantee Manny Garcia, rather than grantor [Jason] Burkett, so it did not convey legal title to Manny Garcia.  A deed that is not signed by a grantor is *void ab initio* and cannot pass title, even to an innocent purchaser. . . .  Because Manny Garcia did not have legal title, a subsequent deed dated August 14, 2017 from Manny Garcia to James Raymond Burkett was also *void ab initio* and did not convey legal title.  Therefore, legal title still rests in [Jason].  If [Zina] sells the condominium, then after the payment of closing costs, sales costs and valid and perfected liens, [Jason] will receive a credit of the remaining net sales proceeds against the amounts owed by him in this Judgment.  Within 10 days of any such sale, [Zina] is ordered to provide a copy of the closing statement to [Jason].  In order to get this credit, [Jason] must file a copy of the closing statement from such sale with this Court along with a motion asking for the application of the credit.

and he notes that neither Garcia nor the current owner of the property—Jason's father—were joined as parties to the suit. *See Ladner v. Reliance Corp.*, 293 S.W.2d 758, 763 (Tex. 1956) ("A junior lienholder or person in possession of or claiming an interest in the security if a necessary party to an action to foreclose a note and mortgage on either real or personal property.").

In response, Zina argues the issue was tried by consent. She also contends that the record supports the trial court's finding that the purported 2017 sale was void because Jason did not sign the deed. *See Sanchez v. Telles*, 960 S.W.2d 762, 768 (Tex. App.—El Paso 1997, pet. denied) (finding that the failure of the grantor to sign a deed "created a void deed *ab initio*" and noting that "[a] deed which is void cannot pass title even to an innocent purchaser from the grantee").

We disagree that the issue was tried by consent. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." TEX. R. CIV. P. 67; *Gamboa v. Gamboa*, 383 S.W.3d 263, 271 (Tex. App.—San Antonio 2012, no pet.). Trial by consent is intended to cover only the exceptional case in which it clearly appears from the record as a whole that the parties tried the unpleaded issue; it should be applied with care and is not intended to establish a general rule of practice. *Guillory v. Boykins*, 442 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *In re A.B.H.*, 266 S.W.3d 596, 600 (Tex. App.—Fort Worth 2008, no pet.); *Greene v. Young*, 174 S.W.3d 291, 301 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). To determine whether an issue was tried by consent, we examine the record not for evidence pertaining to the issue, but rather for evidence that the issue was actually tried. *Guillory*, 442 S.W.3d at 690; *Greene*, 174 S.W.3d at 301. A party's unpleaded issue may be deemed tried by consent when

20

evidence on the issue is developed under circumstances indicating both parties understood the issue was present in the case, and the other party failed to make an appropriate complaint. *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 567 (Tex. App.—San Antonio 2011, no pet.).

Section 157.323 of the family code permits an action to foreclose a lien on property imposed to secure a child support obligation. *See* TEX. FAM. CODE ANN. § 157.323. But Zina's live motion to enforce did not seek this relief, nor did it even mention the lien on the condominium. Zina notes that there was evidence adduced at the January 2018 hearings regarding the appraised value of the condominium, and regarding Jason's attempts to transfer the property in an apparent attempt to "deprive [her] of her collateral."[14] That may be true, but we find nothing in the record indicating that both parties understood that judicial foreclosure was a potential remedy. Instead, based on this record, we conclude that the judicial foreclosure set forth in paragraph 49 of the 2018 Order was improper because it did not conform to the pleadings.[15] *See* TEX. R. CIV. P. 301 ("The judgment of the court shall conform to the pleadings . . . ."). Jason's third cross-issue is sustained.

### 3.    Lien on Separate Property

By his fourth cross-issue, Jason contests paragraph 48 of the 2018 Order, which provides:

48.    The Court hereby imposes a lien on any membership or ownership

---

[14] That evidence included: (1) a copy of a warranty deed purporting to transfer the condominium from Jason to Garcia which was signed only by Garcia; (2) a copy of another warranty deed purporting to transfer the condominium from Garcia to James Burkett; (3) Jason's testimony that he "sold" the condo to his father to satisfy a $70,000 debt based on a "father and son deal"; and (4) Jason's testimony that he "sold" the condo to Garcia for $178,000 but received "[z]ero" money from Garcia.

[15] We note that the lien securing the $760,000 child support obligation, which was imposed by the 2016 Order, is still in effect.

interests owned by Jason Burkett in the professional association known as Jason A. Burkett, DDS, P.A. and the limited liability company known as JRCM Enterprises, PLLC to secure the amounts owed in this Judgment. Any distributions from either entity to which Jason Burkett is entitled shall be paid to Zina Burkett to satisfy the amounts owed in this Judgment. In the event any dental practice owned by Jason A. Burkett, DDS, P.A. is sold, the net sales proceeds remaining after the payment of closing costs shall be paid to Zina Burkett to satisfy the amounts owed in this Judgment.

Jason argues that the imposition of a lien on his separate property was improper because the property "did not directly benefit from the community estate."

"When dividing marital property upon divorce, and absent a reimbursement interest to the community, trial courts may not impose liens on a spouse's separate property for the general purpose of securing a just and right division of marital property." *Winkle v. Winkle*, 951 S.W.2d 80, 87 (Tex. App.—Corpus Christi–Edinburg 1997, pet. denied) (citing *Heggen v. Pemelton*, 836 S.W.2d 145, 146 (Tex. 1992)). "But trial courts generally may impose equitable liens on one spouse's separate property as a means for securing the discharge of payments owed by one spouse to the other." *Id.* (citing *Hegger*, 836 S.W.2d at 146; *In re Marriage of Jackson*, 506 S.W.2d 261, 267 (Tex. App.—Amarillo 1974, writ dism'd)). "Such liens, however, are permissible only against the separate property to which improvement was made at community expense." *Id.* (citing *Smith v. Smith*, 715 S.W.2d 154, 161 (Tex. App.—Texarkana 1986, no writ)).

Jason argues that the evidence shows that he "sold and closed" the dental practice that was in existence during the marriage, and that the entities mentioned in paragraph 48 were established in 2017; therefore, according to Jason, those entities could not have "benefitted from the community estate."

In response, Zina contends that the lien is justified because "Jason spent the majority of Zina's share from the sale of the dental practice on his personal debts and

22

taxes, and improperly sold or transferred the collateral . . . that was securing Zina's child support judgment." However, Zina does not dispute Jason's contention that the specific entities mentioned in paragraph 48 were established several years after the divorce was finalized in 2011. We conclude that the lien imposed in paragraph 48 is erroneous because the separate properties mentioned therein were not subject to "improvement [at] community expense." *See id.* Jason's fourth cross-issue is sustained.

### 4. Motion to Reopen Evidence

Following the hearings on Zina's 2017 motion to enforce, but before judgment was rendered, Jason filed a motion seeking, among other things, to reopen the evidence. Jason sought to introduce evidence of a Corrected Warranty Deed ostensibly curing the defects—specifically, the lack of his signature—on the 2017 deed purporting to transfer the South Padre Island condominium to Manny Garcia. According to Jason, the Corrected Warranty Deed contained both his and Garcia's signatures and thus proves that Jason has no ownership interest in the property. Jason contends by his sixth cross-issue that the trial court erred in denying this motion.

"When it clearly appears to be necessary to the due administration of justice, the court may permit additional evidence to be offered at any time . . . ." TEX. R. CIV. P. 270. In determining whether to permit additional evidence under this rule, a court should consider whether (1) the moving party showed due diligence in obtaining the evidence; (2) the proffered evidence is decisive; (3) reception of such evidence will cause undue delay; and (4) granting the motion will cause injustice. *Poag v. Flories*, 317 S.W.3d 820, 827 (Tex. App.—Fort Worth 2010, pet. denied). The decision to reopen is within the trial court's sound discretion. *Id.* "[A] trial court does not abuse its discretion by refusing to reopen a case after evidence is closed if the party seeking to reopen has not shown

23

diligence in attempting to produce the evidence in a timely fashion." *Lopez v. Lopez*, 55 S.W.3d 194, 201 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.).

We have already concluded that the judicial foreclosure provision in paragraph 49 of the 2018 Order was not supported by the pleadings. In any event, in his motion to reopen the evidence, Jason summarily alleged that he "was diligent in obtaining the evidence"; however, he did not explain why or how he was unable to procure the evidence prior to the January 2018 hearings on Zina's enforcement motion. Under these circumstances, we cannot say the trial court abused its discretion. Jason's sixth cross-issue is overruled.

### III. CONCLUSION

This case involves multiple agreements, decrees, and orders which purport to govern Jason's obligations as to child support, alimony, and property division. Ultimately, the parties came to a settlement agreement in 2016, which was incorporated into an order that is now final and enforceable. The trial court erred in modifying that order. Instead, the court had a duty to confirm the amount of child support arrearages and render a cumulative money judgment. *See* TEX. FAM. CODE ANN. § 157.263(a) ("If a motion for enforcement of child support requests a money judgment for arrearages, the court shall confirm the amount of arrearages and render one cumulative money judgment."); *In re Dryden*, 52 S.W.3d 257, 263 (Tex. App.—Corpus Christi–Edinburg 2001, orig. proceeding) (noting that § 157.263(a) "imposes an affirmative, mandatory duty on the trial court to reduce a child support arrearage to a money judgment upon request"); *see also Chenault*, 296 S.W.3d at 189 (observing that the trial court "acts as a mere scrivener in mechanically tallying up the amount of arrearage").

For the reasons set forth herein, we reverse paragraphs 15, 16, 21, 24, 25, 26, 28,

24

30, 31, 40, 41, 46, 47, 48, and 49 of the 2018 Order, and we remand for further proceedings consistent with this opinion. On remand, the trial court is instructed to calculate the amount of arrearages based upon the payment schedule set forth in the 2016 Order, and to confirm those arrearages. *See* TEX. FAM. CODE ANN. § 157.263(a). The remainder of the 2018 Order is affirmed.

DORI CONTRERAS
Chief Justice

Delivered and filed the
25th day of July, 2019.